Claudine **HALL** et al., Plaintiffs-Appellants,

v.

Sylvia **GARSON** et al., Defendants-Appellees.

No. 29690

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

July 22, 1970.

Stuart M. Nelkin, Houston, Tex., for Claudine Hall, and another.

James W. Miller, Houston, Tex., for Cosmopolitan Apartments.

Harry M. Reasoner, Houston, Tex., for Robert Sud.

Sam Williamson, Houston, Tex., for Garson & Kaplan.

Before JOHN R. BROWN, Chief Judge, and MORGAN and INGRAHAM, Circuit Judges.

JOHN R. BROWN, Chief Judge:

When Claudine Hall came home on the night of September 24, 1969, and found that her General Electric portable television set had been taken out of her apartment by Sylvia Garson, it is not likely that she realized that basic issues of Federal Court jurisdiction and the jurisdiction of that unfortunate step child of Federal procedure, the three-Judge Court, would be raised by her dispute with her landlady. But such has been the result.

Sylvia seized Claudine's television under the authority of Tex.Rev.Civ.Stat. Ann. Art. 5238a,[1] which gives the

---

1. "Section 1. The operator of any residential house, apartment, duplex or other single or multi-family dwelling, shall have a lien upon all baggage and all other property found within the tenant's dwelling for all rents due and unpaid by the tenant thereof; and said operator shall have the right to take and retain possession of such baggage and other property until the amount of such unpaid rent is paid. Such baggage and other property shall be exempt from attachment or execution to the same extent as set out in Article 4594, Revised Civil Statutes of Texas, 1925, as amended, regulating baggage liens for hotels, boarding houses, rooming houses, inns, tourist courts and motels.

Sec. 2. In any sale to satisfy said lien, said operator shall be subject to the same duties and shall follow the same procedures as set out for proprietors of hotels, boarding houses, inns, tourist courts, and motels, in Article 4595, Revised Civil Statutes of Texas, 1925, as amended.

Sec. 3. Notwithstanding any provisions to the contrary contained in Article 3840, Revised Civil Statutes of Texas, 1925, as amended, there shall be exempt from the lien set out in Section 1 of this Act, the following: (1) all wearing apparel and (2) all tools, apparatus, and books belonging to any trade or profession. Additionally, the following shall be exempt from such lien when said house, duplex or apartment is occupied by a family, defined as a person and others whom he is under a legal or moral obligation to support: (1) one automobile and one truck, (2) family library and all family portraits and pictures, (3) household furniture to the extent of one couch, two living room chairs, dining table and chairs, all beds and bedding, and all kitchen furniture and utensils, (4) all agricultural implements, saddles, and bridles, and, (5) goods subject to a recorded chattel mortgage lien or financing agreement.

Sec. 4. In the event the lessor is unable to determine who owns said baggage or property, or whether said baggage or property is subject to a chattel mortgage or financing statement, or whether said baggage or property is exempt under Section 3 hereof, then the lessor, upon retaining said baggage or other property, shall be liable to safely store said baggage or property and to return it immediately upon request to the rightful owner or mortgagee, if owner or mortgagee is other than the lessee or if the amount due is paid in full. In the event of loss, destruction, theft, or sale thereof, the lessor shall be liable for the full replacement cost of such baggage or other property.

Sec. 5. Nothing contained herein shall prejudice any contractual agreements entered into by lessors and lessees concerning the subject matter of this article.

landlord a lien on the personal goods of the tenants that are in the rented premises and in addition gives the landlord authority to enforce that lien by the peremptory seizure of the property. The lien is given to the extent of past-due rents and the property may be seized without any prior judicial procedure to determine the validity of the claim for the past-due debts or the accuracy of the amount claimed.

The constitutionality of this statutory authority is here challenged by Claudine as individual plaintiff for herself and as a representative of the class of tenants affected by Art. 5238a. See F.R.Civ.P. 23(a). Injunctive relief is sought against defendants, Sylvia Garson, Max M. Kaplan, the owner of the apartments Sylvia managed, and all other persons similarly situated. This constitutional challenge was brought in the Federal District Court for the Southern District of Texas. It is urged that the Court had jurisdiction under 28 U.S.C.A. § 1343 [2] and it is urged that a claim for which relief can be granted is stated under 42 U.S.C.A. § 1983.[3] Because of the request for injunctive relief in the constitutional attack upon a state statute, a three-Judge Court was requested pursuant to 28 U.S.C.A. § 2281.[4]

After a hearing, the District Court refused to notify the Chief Judge of the Circuit pursuant to 28 U.S.C.A. § 2284 [5]

---

Sec. 6. All laws and parts thereof, in conflict herewith, are hereby repealed to the extent of the conflict and this Act shall take precedence over all other laws in conflict with this Act."
Tex.Rev.Civ.Stat.Ann. Art. 5238a.

2. "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person·:
(1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;
(2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;
(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."
28 U.S.C.A. § 1343

3. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
42 U.S.C.A. § 1983

4. "An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."
28 U.S.C.A. § 2281

5. "In any action or proceeding required by Act of Congress to be heard and determined by a district court of three judges the composition and procedure of the court, except as otherwise provided by law, shall be as follows:
(1) The district judge to whom the application for injunction or other relief is presented shall constitute one member of such court. On the filing of the application, he shall immediately notify the chief judge of the circuit, who shall designate two other judges, at least

of the request for a three-Judge Court. The District Court also dismissed the underlying claim on the grounds that there was no jurisdiction under 28 U.S. C.A. § 1343 nor a claim for which relief could be granted under 42 U.S.C.A. § 1983 since there were adequate state judicial remedies available.

■ Plaintiffs sought relief in this Court.[6] We reverse the District Court. That Court had jurisdiction under 28 U.S.C.A. § 1343 and a claim for which relief can be granted has been stated under 42 U.S.C.A. § 1983. But, although there is a substantial question presented, the District Court was correct in refusing to notify the Chief Judge of the request for a three-Judge Court.

## I. Jurisdiction of the District Court

### A. Exhaustion of State Remedies

Whether this is a one-Judge case or a three-Judge case cannot be determined until it is decided whether it is a Federal case. The District Court's articulated justification for its holding that it lacks jurisdiction was the failure of the tenants either to exhaust their state remedies, whatever they may be, or to show that these remedies were inade-

---

one of whom shall be a circuit judge. Such judges shall serve as members of the court to hear and determine the action or proceeding.

(2) If the action involves the enforcement, operation or execution of State statutes or State administrative orders, at least five days notice of the hearing shall be given to the governor and attorney general of the State.

If the action involves the enforcement, operation or execution of an Act of Congress or an order of any department or agency of the United States, at least five days' notice of the hearing shall be given to the Attorney General of the United States, to the United States attorney for the district, and to such other persons as may be defendants.

Such notice shall be given by registered mail or by certified mail by the clerk and shall be complete on the mailing thereof.

(3) In any such case in which an application for an interlocutory injunction is made, the district judge to whom the application is made may, at any time, grant a temporary restraining order to prevent irreparable damage. The order, unless previously revoked by the district judge, shall remain in force only until the hearing and determination by the full court. It shall contain a specific finding, based upon evidence submitted to such judge and identified by reference, thereto, that specified irreparable damage will result if the order is not granted.

(4) In any such case the application shall be given precedence and assigned for a hearing at the earliest practicable day. Two judges must concur in granting the application.

(5) Any one of the three judges of the court may perform all functions, conduct all proceedings except the trial, and enter all orders required or permitted by the rules of civil procedure. A single judge shall not appoint a master or order a reference, or hear and determine any application for an interlocutory injunction or motion to vacate the same, or dismiss the action, or enter a summary or final judgment. The action of a single judge shall be reviewable by the full court at any time before final hearing.

A district court of three judges shall, before final hearing, stay any action pending therein to enjoin, suspend or restrain the enforcement or execution of a State statute or order thereunder, whenever it appears that a State court of competent jurisdiction has stayed proceedings under such statute or order pending the determination in such State court of an action to enforce the same. If the action in the State court is not prosecuted diligently and in good faith, the district court of three judges may vacate its stay after hearing upon ten days notice served upon the attorney general of the State.
28 U.S.C.A. § 2284

6. The case came before us on motion for summary reversal. The Court on its own called for full briefs on the merits. Thereafter, pursuant to Rule 18 of the Rules of this Court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the Clerk to place the case on the Summary Calendar and to notify the parties in writing. See Murphy v. Houma Well Service, 5 Cir., 1969, 409 F.2d 804, Part I; Huth v. Southern Pacific Co., 5 Cir., 1969, 417 F.2d 526, Part I.

quate. Support for this jurisdictional requirement was found in the recent opinion in Schwartz v. Galveston Independent School District, S.D.Tex.1970, 309 F. Supp. 1034,[7] by another Judge of the District. Court for the Southern District of Texas.

In *Schwartz* the Court held that in order for there to be jurisdiction in a Federal District Court under the 28 U.S. C.A. § 1343 or a cause of action stated under 42 U.S.C.A. § 1983 it was necessary for the plaintiff to show that remedies available under state administrative and judicial procedures either had been exhausted or were inadequate to provide relief. The conclusion reached in *Schwartz* that Federal Courts lack jurisdiction to adjudicate claims of deprivation of Federal rights is based upon a rereading of the legislative history of 42 U.S.C.A. § 1983.

But the reading of that legislative history by a Federal District Court or even by a Court of Appeals has largely been estopped by one hundred years of litigation under § 1983. During this one hundred years of experience the cry that it was necessary for state judicial remedies to be exhausted or shown to be inadequate before Federal Court action to restrain state conduct could be taken has been heard repeatedly. It has, however, consistently fallen on unresponsive ears and been muffled by the Supreme Court. See C. Wright, Federal Courts, § 49 (2d ed. 1970).

The cry was made by local government when local regulations of business were under constitutional attack. But the response to these cries was limited. In Bacon v. Rutland R. R. Co., 1914, 232 U.S. 134, 34 S.Ct. 283, 58 L.Ed. 538, an equity bill to restrain the state public service commission from requiring the railroad to locate a passenger station in a particular place, Mr. Justice Holmes said that the state remedy available to the railroad to make its challenge was judicial and "this being so * * * the railroad company was free to assert its rights in the district court of the United States." 232 U.S. at 138, 34 S. Ct. at 284, 58 L.Ed. at 539. Mr. Chief Justice Taft took the same position in Pacific Telephone and Telegraph Co. v. Kuykendall, 1924, 265 U.S. 196, 44 S.Ct. 553, 68 L.Ed. 975. The only positive response came in the guise of the abstention doctrine (see IB, *infra*) where controlling questions of state law, which were unresolved by state courts, were presented. See e. g., Gilchrist v. Interborough Rapid Transit Co., 1924, 279 U.S. 159, 49 S.Ct. 282, 73 L.Ed. 652.

The same cry was also heard when the actions of local government were under attack because they allegedly deprived persons of personal civil rights. And it was again muffled. In Lane v. Wilson, 1939, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281, a suit challenging an Oklahoma restriction on voting, Mr. Justice Frankfurter said that to "vindicate his present grievance the plaintiff did not have to pursue whatever remedy may have been open to him in the state courts. * * * Barring only exceptional circumstances * * * or explicit statutory, requirements * * * resort to a federal court may be had without first exhausting the judicial remedies of the state." 307 U.S. at 274, 59 S.Ct. at 875, 83 L.Ed. at 1287 (Citations omitted).

The same cry was again heard after Mr. Justice Douglas set out the purposes [8] of 42 U.S.C.A. § 1983 in Monroe

---

7. Much of the underlying rationale of *Schwartz* has recently been rejected by this Court in Harkless v. Sweeny Independent School Dist., 5 Cir., 1970, 427 F.2d 319.

8. The purposes for the 42 U.S.C.A. § 1983, Civil Rights Act of 1871, listed by Justice Douglas were (i) to override certain kinds of state laws, (ii) to provide "a remedy

where state law was inadequate" and (iii) "to provide a federal remedy where the state remedy, though adequate in theory was not available in practice." Monroe v. Pape, *supra*, 365 U.S. at 173–174, 81 S.Ct. at 477, 5 L.Ed.2d at 498.

This listing and the review of legislative history in *Monroe* was the backbone of authority on which the District Court constructed the skeleton for *Schwartz*,

v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492. It was argued that *Monroe* held that the only purpose of § 1983 was to provide relief where state remedies were inadequate or only available in theory, not in practice. But the Supreme Court soon quieted this argument.

■ In McNeese v. Board of Ed., 1963, 373 U.S. 668, 671, 83 S.Ct. 1433, 1435, 10 L.Ed.2d 622, 624–625 the Court pointed out that in Monroe, *supra*, 365 U.S. at 183, 81 S.Ct. at 482, 5 L.Ed.2d at 503 it had said that the "federal remedy is supplementary to the state remedy, and the latter need not be sought and refused before the federal one is invoked." This has routinely been repeated by that Court, Damico v. California, 1967, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed. 2d 647; Houghton v. Shafer, 1968, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319; and we do not believe that the pronouncements [9] made by the Court in those cases were meant to be limited to any particular type of § 1983 [10] case. See Note, Exhaustion of State Remedies

under the Civil Rights Act, 68 Colum. L.Rev. 1201 (1968). We believe they were to have general application.[11] In a like manner, this Court routinely rejects the cry that it is necessary to exhaust state remedies. See Orr v. Thorpe, 5 Cir., 1970, 427 F.2d 1129. And we here again reject it.

### B. The Abstention Doctrine

In its order dismissing this case the District Court's citation of *Schwartz* could also be construed as invoking the mutation of the abstention doctrine that was there given birth. The *Schwartz* version of the abstention doctrine is that since the state has a vital interest in education and has a procedure through which a federal claim may be presented any federal interests are "amply protected by the opportunity for direct review in the United States Supreme Court of all State judicial decisions." Schwartz, *supra*, 309 F.Supp. at 1049.

■ But this mutation is inconsistent with the prior evolution of the law. It,

---

*supra.* See Harkless v. Sweeny Independent School District, *supra.* See also Note, Limiting the Section 1983 Action in the Wake of Monroe v. Pape, 82 Harv.L.Rev. 1486 (1969).

9. Another important pronouncement by the Supreme Court came in King v. Smith, 1968, 392 U.S. 309, 312, 88 S.Ct. 2128, 2131, 20 L.Ed.2d 1118, 1123 n. 4 where the Court said:

"Decisions of this Court * * * establish that a plaintiff in an action brought under the Civil Rights Act, 42 U.S.C. § 1983, 28 U.S.C. § 1343, is not required to exhaust administrative remedies, where the constitutional challenge is sufficiently substantial, as here, to require the convening of a three-judge court."

We do not believe that this pronouncement constituted a limitation on the *McNeese, Damico,* and *Houghton* cases. The reference to a three-Judge Court in King, *supra,* goes to the substantiality of the constitutional attack not the nature of the Court to pass on it. Here, of course, the challenge to Tex.Civ.Stat.Ann. Art. 5238a is sufficiently substantial to meet the requirements of Ex Parte Poresky, 1933, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152, see Mayhue's Super Liquor Store,

Inc. v. Meiklejohn, 5 Cir., 1970, 426 F.2d 152; see Mayhue's Super Liquor Store, Court lacks jurisdiction because the requirements of 28 U.S.C.A. § 2281 are not met is not significant.

10. The pronouncement has been made in four separate opinions. *Houghton* dealt with the application of prison rules; *Damico* dealt with eligibility for welfare payments; *McNeese* dealt with operation of public schools; and *Monroe* dealt with police misconduct.

11. There can be no doubt that until *Monroe, McNeese, Damico* and *Houghton* the conventional wisdom was that the exhaustion of state administrative remedies was required while there was no need to exhaust judicial remedies. C. Wright, *supra,* § 49 (2d ed. 1970). Here, of course, only judicial remedies are involved. It may be that exhaustion of administrative remedies is still required at least to the extent that it is necessary to have an authoritative institutional decision or pronouncement. Thus it might be necessary to require a school student to seek school board review of a principal's action. Stevenson v. Bd. of Education of Wheeler County, 5 Cir., 1970, 426 F.2d 1154.

like the exhaustion requirement, cannot survive. First, the abstention doctrine in federal constitutional claims is generally grounded on uncertainty [12] created by the "strands of local law woven into the case" McNeese, *supra,* 373 U.S. at 673, 83 S.Ct. at 1436, 10 L.Ed.2d at 626. See Reetz v. Bozanich, 1970, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68. When, however, the cloth of state law is, as here,[13] off the loom and there can be no doubt as to what the state law provides, there is no place for abstention.[14] Moreover, this doctrine was not changed by Reetz v. Bozanich, 1970, 397 U.S. 82,

90 S.Ct. 788, 25 L.Ed.2d 68. There the Court directed the District Court to abstain from passing on an Alaska fishing license statute. There was great uncertainty whether the statute violated the Alaska Constitution and because of this uncertainty the abstention doctrine was invoked.[15] There was thus no departure from the traditional rule.[16]

## C. Requirement Of A Jurisdictional Amount

■ Although the District Court did not include reference to them in its or-

12. It has been asserted that there are four abstention doctrines. In addition to the (i) traditional doctrine classically articulated in Railroad Commission v. Pullman Co., 1941, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971, (ii) it has been argued that federal Courts may avoid decision in order to prevent needless conflicts with state activity, (iii) to leave to the states the resolution of unsettled questions of state law, and (iv) to ease the congestion of federal court dockets. C. Wright, Federal Courts § 52 (2d ed. 1970). But the scope of these different doctrines, if indeed they are different, is illusive. See Zwickler v. Koota, 1967, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444. It is certain, however, that none authorizes abstention when state law is clear simply because the state has a general interest in the subject matter of the controversy, whether it is schools or debt collection. See McNeese, *supra.*

13. There can be no doubt that under Tex. Rev.Civ.Stat.Ann. Art. 5238a the claimed defect—the power of the landlord to seize the property of the tenant without any hearing or other proceeding—is present since the statute provides that "said operator shall have the right to take and retain possession of such baggage and other property until the amount of such unpaid rent is paid."

14. The rule has recently been well articulated by Judge Dyer for a 28 U.S.C.A. § 2281 three-Judge Court:
 "The fact that a state remedy is available is not a valid basis for federal court abstention. Monroe v. Pape, 1961, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed. 2d 492; McNeese v. Board of Education, 1963, 373 U.S. 668, 671, 83 S.Ct. 1433, 10 L.Ed.2d 622; Zwickler v. Koota, 1967, 389 U.S. 241, 251, 88 S.Ct.

391, 19 L.Ed.2d 444. There can be no doubt in this case about what the statute means. It defies any interpretation that would or could avoid or modify the constitutional question. In such a case it is the duty of a federal court to exercise its jurisdiction. Zwickler v. Koota, *supra*; Harman v. Forssenius, 1965, 380 U.S. 528, 534–535, 85 S.Ct. 1177, 14 L.Ed.2d 50; *cf.* Reetz v. Bozanich, 1970, 397 U.S. 88, 91, 90 S.Ct. 788, 25 L.Ed.2d 73, 76; Wright v. City of Montgomery, Alabama, 5 Cir., 1969, 406 F. 2d 867, 871."
 Hargrave v. Kirk, M.D.Fla., 1970, 313 F. Supp. 944.

15. In *Reetz* the Court quoted with approval from its opinion in City of Meridian v. Southern Bell Tel. & Tel. Co., 1959, 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562:
 "Proper exercise of federal jurisdiction requires that controversies involving unsettled questions of state law be decided in the state tribunals preliminary to a federal court's consideration of the underlying federal constitutional questions. * * * That is especially desirable where the questions of state law are enmeshed with the federal questions."
 Reetz, 397 U.S. at 85, 90 S.Ct. at 789, 25 L.Ed.2d at 70.

16. Judge Murrah's statement in Stapleton v. Mitchell, D.Kan., 1945, 60 F.Supp. 51, 55, which Mr. Justice Douglas quotes in *McNeese*, deserves repeating here:
 "We yet like to believe that wherever the Federal Courts sit, human rights under the Federal Constitution are always a proper subject for adjudication, and that we have not the right to decline the exercise of that jurisdiction simply because the rights asserted may be adjudicated in some other forum."

ders dismissing the case, the defendants raised at that level and also press here other attacks on the jurisdiction of the District Court. The first claim is that there is no jurisdiction because the requisite jurisdictional amount [17] is not present. But 28 U.S.C.A. § 1343 provides a clear exception (see 28 U.S.C.A. § 1331 (a) note 17, *supra*) from the jurisdictional amount requirement. Although there may be some dispute about the applicability of 28 U.S.C.A. § 1343(3), there can be no doubt that § 1343(4) is applicable and the complaints were encompassed in § 1343(4) whether cited specifically or not. Certainly § 1983 is an "Act of Congress providing for the protection of civil rights, including the right to vote." Gomez v. Florida State Employment Service, 5 Cir. 1969, 417 F.2d 569, 580 n. 39.

### D. Property Rights Exemption

Closely akin to defendants' assertion that the District Court lacks jurisdiction because a jurisdictional amount has not been stated is their claim that there is no jurisdiction under 28 U.S.C.A. § 1343 because only "property rights" are involved.[18] The argument is based on statements in several cases that § 1343 does not protect property rights. See e. g. Hague v. C.I.O., 1939, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423; Holt v. Indiana Mfg. Co., 1899, 176 U.S. 68, 20 S.Ct. 272, 44 L.Ed. 374. We have expressed doubts, see e. g. Bussie v. Long, 5 Cir., 1967, 383 F.2d 766; Atlanta Bowl-

ing Center, Inc. v. Allen, 5 Cir., 1968, 389 F.2d 713.

These cases are not, however, applicable here.[19] The act that gave rise to this controversy was the seizure by Sylvia Garson of Claudine Hall's General Electric television. But the rights that the petition seeks to protect are not the rights to the television. They are, instead, the right of the individual to be secure in his home and free from the invasion of that home without any prior procedure to protect his interest. They are then the most personal constitutional liberties of privacy and the right to be free from unreasonable searches and seizures by private persons with the blessings of this state. Plaintiffs seek the opportunity to protect those rights through the due procedures of the law. See Gomez, *supra*, 417 F.2d at 579 n. 37. These rights that this petition seeks to protect are truly the fundamentals of liberty, the essence of human dignity. Such fundamental, human, highly personalized rights are "just the stuff from which § 1983 claims are to be made." Gomez, *supra*, 417 F.2d at 579; See Monroe v. Pape, *supra*.

### II. Claim For Which Relief May Be Granted Under 42 U.S.C.A. § 1983

### A. State Action

In addition to the defendants' jurisdictional claims, they argue that plaintiffs have not stated a claim for which relief can be granted under § 1983. The

---

17. "(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

(b) Except when express provision therefor is otherwise made in a statute of the United States, where the plaintiff is finally adjudged to be entitled to recover less than the sum or value of $10,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of interests and costs, the district court may deny costs

to the plaintiff and, in addition, may impose costs on the plaintiff."
28 U.S.C.A. § 1331

18. All of the cases stating that there is such an exemption apparently deal with § 1343(3) and not with § 1343(4). (See note 2, supra).

19. We do not attempt to here pass on the scope of the asserted "property exemption" § 1343 and § 1983. But see McGuire v. Sadler, 5 Cir., 1964, 337 F.2d 902; Note, The "Property Rights" Exception to Civil Rights Jurisdiction—Confusion Compounded, 43 N.Y.U.L.Rev. 1208 (1968).

defendants' first contention is that the requisite state action is not present since the television set was not seized by a state official but by the landlady.[20]

■ There can be no doubt that the defendants are correct in their claim that "state action" is required for there to be a claim under § 1983. Moreover, there must be state action for there to be a deprivation of the rights secured by the Fourteenth Amendment. See e. g. Pierson v. Ray, 1967, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288, Shelley v. Kraemer, 1948, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161. See generally, Horan, Law and Social Change; The Dynamics of the 'State Action' Doctrine, 17 J.Pub.L. 258 (1968). But it is equally without doubt that the actions of a private citizen can, and in some circumstances do, become the actions of the state both for purposes of § 1983 and for the due process clause of the Fourteenth Amendment.[21] Adickes v. S. H. Kress and Co., 1970, 398 U.S. 144, 162–173, 90 S.Ct. 1598, 1611–1616, 26 L.Ed.2d 142, 157–162; Baldwin v. Morgan, 5 Cir. 1961, 287 F.2d 750, 756.

In this case the alleged wrongful conduct was admittedly perpetrated by a person who was not an officer of the state or an official of any state agency. But the action taken, the entry into another's home and the seizure of another's property, was an act that possesses many, if not all, of the characteristics of an act of the State. The execution of a lien, whether a traditional security interest or a quasi writ of attachment or judgment lien has in Texas traditionally been the function of the Sheriff or constable.[22] Thus Article 5238a vests in the landlord and his agents authority that is normally exercised by the state and historically has been a state function.

■ Since United States v. Classic, 1941, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368, a case involving irregularities in the conduct of a state Democratic party primary,[23] the question of state action has been whether the alleged wrongdoer was dressed with state authority. As Mr. Justice Stone said in *Classic*, the misuse of power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with authority of state law, is state action taken 'under color of state law'." 313 U.S. at 326, 61 S.Ct. at 1043, 85 L.Ed. at 1383. And here Sylvia's action, which was traditionally a state function, was draped with such authority.

Moreover, although originally a state Court action and not a § 1983 case, Sniadach v. Family Finance Corp., 1969, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349, the case upon which plaintiffs base their claim that they have been deprived of a right secured by the Constitution, necessarily involved a finding of state action

20. Under a literal reading of § 1983, there would be little question that the first element had been met since the statute provides a cause of action against "every person who, under color of any *statute* causes * * * any citizen of the United States * * *." to be deprived of rights, privileges, immunities secured by the constitution and laws of the United States. (emphasis added) And there can be no doubt that the seizure of Claudine Hall's General Electric television by Sylvia Garson was under the color of Art. 5238a. See Reitman v. Mulkey, 1967, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830.

21. It is equally clear that private citizens who act in concert with state officials are clothed with state action for the purposes of both § 1983 and the Fourteenth Amendment. See e. g. United States v. Price, 1966, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267; Gomez v. Florida State Employment Commission, 5 Cir., 1969, 417 F.2d 569, 578.

22. See Miller v. Clements, Tex., 1881, 54 Tex. 351; Erwin v. Bowman, Tex.1879, 51 Tex. 513; Manhattan Shirt Co. v. Moore, Tex.Civ.App., 1964, 385 S.W.2d 486.

23. *Classic* involved prosecution under what is now 18 U.S.C.A. § 242, which is the criminal counterpart to 42 U.S.C.A. § 1983. It is clear that the scope of the two statutes is parallel. See U. S. v. Price, 1966, 383 U.S. 787, 794–795, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267, 272 n. 7.

for purposes of the 14th Amendment. See Adickes v. S. H. Kress and Co., *supra.* And in *Sniadach* the ministerial act of issuance of a writ of garnishment and the service of that writ by the creditor's attorney upon the garnishee, the debtor's employer, satisfied the state action requirement. The functional role of the creditor's attorney and debtor's employer in *Sniadach,* even when coupled with the formal role of the clerk who issued the writ, is not significantly different from the role of the landlady here. And here the state action requirement is also met.[24]

## B. Substance Of The Cause Of Action

In addition to their challenge to the existence of the requisite state action, defendants argue that the other element of a cause of action under § 1983—the deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States—was not alleged here. The plaintiff's claim is, however, that investing the landlord with power to take unilateral action Art. 5238a deprives her, and the class she represents, of the protection of the due process clause of the Fourteenth Amendment. This claim springs from Sniadach v. Family Finance Corp., 1969, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 in which the Supreme Court held a Wisconsin garnishment statute unconstitutional. The defect in the statute was its failure to provide the debtor with any procedural protection against the loss of wages—"the interim freezing of wages without a chance to be heard violated procedural due process." 395 U.S. at 340, 89 S.Ct. at 1822, 23 L.Ed.2d at 353.

See Note, Attachment and Garnishment—Constitutional Law-Due Process of Law—Garnishment of Wages Prior to Judgment is a Denial of Due Process: The *Sniadach* Case and Its Implications for Related Areas of the Law, 68 Mich. L.Rev. 986 (1970). See also Goldberg v. Kelly, 1970, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287.

Before determining whether *Sniadach* requires a conclusion that plaintiffs have stated a claim, we must sound a caveat. In determining whether a claim for which relief can be granted has been stated we do not pass on the merits of that claim. That is for the trial Court to determine. See Public Affairs Associates, Inc. v. Rickover, 1962, 369 U.S. 111, 82 S.Ct. 580, 7 L.Ed.2d 604. In making that determination we do, however, indicate some of the considerations and factors that may be important.

Among these is the fact that 5238a has the same characteristic that the Supreme Court found objectionable in the Wisconsin statute: Property may be seized by the landlord without "a chance to be heard." But Art. 5238a is not a garnishment statute and all prehearing summary procedures are clearly not unconstitutional. The requirements for due procedure must be balanced against the competing interest of society served by quick and decisive action.[25] And in extra-ordinary situations the prehearing seizure of property is permissible, Ewing v. Mytinger & Casselberry, Inc., 1950, 339 U.S. 594, 598–600, 70 S.Ct. 870, 872–873, 94 L.Ed. 1088, 1092–1094; Fahey v. Mallonee, 1947, 332 U.S. 245, 253–254, 67 S.Ct. 1552, 1554–1556, 91 L.Ed. 2030, 2039.

24. There is a suggestion in the plaintiffs' brief that there has been joint action between the landlord and the state in that the state notified the landlord of the existence of his authority to enter Claudine's apartment and seize her property. We do not, however, rely on this. Nor do we pass on whether this would be sufficient state involvement for the case to come under U. S. v. Price, *supra;* Gomez, *supra,* and the other cases of like purport.

25. This was well put by the Second Circuit in Wasson v. Trowbridge, 2 Cir., 1967, 382 F.2d 807, 811 where it said that "to determine in any given case what procedures due process requires, the Court must carefully determine and balance the nature of the private interest involved, taking account of history and the precise circumstances surrounding the case at hand."

Thus the constitutionality of Art. 5238a will depend on this type of balancing in order to determine whether there exists an extraordinary circumstance that would justify the summary seizure which Art. 5238a authorizes.[26] At this stage we cannot say that such an extraordinary circumstance exists. Art. 5238a seems only to protect the landlord's interest, and not any broader public interest. Moreover, there is no requirement in Art. 5238a that there be any showing of the likelihood or the threat of the debtor-tenant's absconding, leaving the creditor-landlord with no effective way to collect a just debt.[27] In addition, the same kind of deep personal hardship can result from the seizure of personal and household goods as resulted from the garnishment of wages under the Wisconsin statute in *Sniadach.*

See Note, *supra,* 68 Mich.L.Rev. at 999–1005.

But, as we indicated before, it is not for us here to determine the ultimate merits of the plaintiffs' challenge. We can, however, determine at this stage that a Rule 12(b) dismissal was error. Issues of such public importance [28] turn on facts and not academic suppositions. Public Affairs Associates, Inc. v. Rickover, *supra.* It may be that in the "normal process of development of the facts and the determination of the real merits of the case," Merlite Land, Sea & Sky, Inc., v. Palm Beach Investment Properties, Inc., 5 Cir., 1970, 426 F.2d 495, a compelling interest served by Art. 5238a, or more properly, its peremptory seizure procedure, will appear. See Local Union No. 300, Amalgamated Meat Cutters & Butcher Workmen of North America,

**26.** Other cases considering the applicability of *Sniadach* to different types of garnishment statutes and other prehearing summary seizure devices given to protect creditors' interest are Arnold v. Knettle, 1969, 10 Ariz.App. 509, 460 P.2d 45 and Larson v. Fetherston, 1969, 44 Wis.2d 712, 172 N.W.2d 20. See also Sackin v. Kersting, 1969, 10 Ariz.App. 340, 458 P.2d 544.

**27.** For a statute that does require such a showing see the Texas writ of attachment statute. Tex.Rev.Civ.Stat.Ann. Art. 275:

"The judges and clerks of the district and county courts and justices of the peace may issue writs of original attachment, returnable to their respective courts, upon the plaintiff, his agent or attorney, making an affidavit stating:

(1) That the defendant is justly indebted to the plaintiff, and the amount of the demand; and

(2) That the defendant is not a resident of the State, or is a foreign corporation, or is acting as such; or

(3) That he is about to remove permanently out of the State, and has refused to pay or secure the debt due the plaintiff; or

(4) That he secretes himself so that the ordinary process of law can not be served on him; or

(5) That he has secreted his property for the purpose of defrauding his creditors; or

(6) That he is about to secrete his property for the purpose of defrauding his creditors; or

(7) That he is about to remove his property out of the State, without leaving sufficient remaining for the payment of his debts; or

(8) That he is about to remove his property, or a part thereof, out of the county where the suit is brought, with intent to defraud his creditors; or

(9) That he has disposed of his property, in whole or in part, with intent to defraud his creditors; or

(10) That he is about to dispose of his property with intent to defraud his creditors; or

(11) That he is about to convert his property, or a part thereof, into money, for the purpose of placing it beyond the reach of his creditors; or

(12) That the debt is due for property obtained under false pretenses."

See generally, Creditor's Rights in Texas (J. McKnight ed. 1963).

**28.** We have here another casualty to evidence "the high mortality rate to a dismissal under F.R.Civ.P. 12(b) for failure to state a claim." Pred v. Board of Public Inst., 5 Cir., 1969, 415 F.2d 851, 852. See Orr v. Thorpe, 5 Cir., 1970, 427 F.2d 1129; Merlite Land, Sea & Sky, Inc. v. Palm Beach Investment Properties, Inc., 5 Cir., 1970, 426 F.2d 495; Barber v. M/V "Blue Cat," 5 Cir., 1967, 372 F.2d 626, 627 n. 1, 1967 A.M.C. 1926; Millet v. Godchaux Sugars, Inc., 5 Cir., 1957, 241 F.2d 264, 265 n. 1.

AFL-CIO v. McCulloch, 5 Cir., 1970, 428 F.2d 396. We do not, however, attempt to forecast or indicate what the final result will be.

### III. The Three-Judge Court Questions

### A. The Substantiality Of The Question

In addition to the questions of the existence of the District Court's jurisdiction and the presence of a claim under § 1983 for which relief can be granted, we are also obligated to pass on the District Court's refusal to request a three-Judge Court pursuant to 28 U.S.C.A. § 2284 (see note, 5 *supra*.) Schackman v. Arnebergh, 1967, 387 U.S. 427, 87 S.t. 1622, 18 L.Ed.2d 865. See Mayhue's Super Liquor Store, Inc. v. Meiklejohn, 5 Cir., 1970, 426 F.2d 142; Currie, Appellate Review of the Decision Whether or Not to Empanel a Three-Judge Federal Court, 37 U.Chi.L.Rev. 159 (1969). The first question to answer in fulfilling that obligation is whether the two-pronged substantiality requirement of Ex Parte Poresky, 1933, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152, has been met. See Local 300, Amalgamated Meat Cutters, *supra;* Hargrave v. McKinney, 5 Cir., 1969, 413 F.2d 320. Here, of course, there can be no question that the challenge to the constitutionality of Art. 5238a presents substantial federal questions. (See II B, *supra*.)

### B. The Technical Requirements Of 28 U.S.C.A. § 2281

Before a three-Judge Court is required or authorized, more than *Poresky* substantiality is required. Under 28 U.S.C.A. § 2281 (see note 4 *supra*) a three-Judge Court has jurisdiction only if the state statute, the operation of which plaintiffs seek to enjoin, has statewide application[29] and the injunctive relief sought will run against a state officer.[30] See C. Wright, Federal Courts § 50 (2d ed. 1970). Here there is no question that Art. 5238a has statewide applicability. There is, however, a serious question whether injunctive relief is sought against a "state officer" for purposes of § 2281.

 Here the injunction is sought against the landlord. And, although he may be performing state functions for purpose of any state action requirement, this does not mean that he becomes a state officer for purpose of § 2281—"an enactment technical in the strict sense of the word and to be applied as such." Phillips v. United States, 1941, 312 U.S. 246, 251, 61 S.Ct. 480, 483, 85 L.Ed. 800 805; Mitchell v. Donovan, 1970, 398 U.S. 427, 90 S.Ct. 1763, 26 L.Ed.2d 378. The three-Judge statutes were first enacted in reaction to Ex parte Young, 1908, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714. Congress believed federal court interference with state policy and state officials would be better accepted if it was the action of a three-Judge rather than one-Judge Court. C. Wright, *supra* at § 50. The idea was to extend to the states as a matter of comity the protection of the considered judgment of three Federal Judges instead of just one.[31] It has been held that the policy of the act does not extend to local officials unless they really are the means whereby the statewide policy is carried out. Rorick v. Board of Comm., 1939, 307 U.S. 208, 59 S.Ct. 808, 83 L.Ed. 1242. It seems apparent that the policy was also never

---

29. Ex parte Collins, 1928, 277 U.S. 565, 48 S.Ct. 585, 72 L.Ed. 990; Moody v. Flowers, 1967, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643.

30. Ex parte Collins, *supra*; Wilentz v. Sovereign Camp, W.O.W., 1939, 306 U.S. 573, 59 S.Ct. 709, 83 L.Ed. 994.

31. As Judge Hutcheson said:
"Many public men were disturbed that the power of the states, exerted to work out experiments in government in their comparatively insulated domains, should be suspended by the injunctive decree of a single Judge, issued without notice, or if after notice, in an informal hearing, and upon affidavits, a hearing lacking in the dignity and importance it was felt such proceedings should have." Hutcheson, A Case for Three Judges, 47 Harv.L.Rev. 795, 805 (1934).

intended to apply to situations, as here, where a private person, although performing a function traditionally performed by the state and "clothed with state authority", who is acting essentially for his own benefit is to be restrained. And the fact that the person may perform a role normally that of the state surely does not create a need for comity.

Thus since all the requirements for a three-Judge Court are not present, the District Court was correct in refusing to notify the Chief Judge of the Circuit pursuant to 28 U.S.C.A. § 2284. We thus send this case back to a one-Judge and not a three-Judge Court. But in so doing we do not deprive the plaintiffs of an opportunity for an effective remedy. The one-Judge Court can certainly give this the expeditious treatment that is required.

Affirmed in part, reversed and remanded in part.