Alfred JERNIGAN

v.

ECONOMY EXTERMINATING COMPANY, Inc. and H. A. Spruill, Individually and in his capacity as Marshal of the Fulton County Civil Court,

State of Georgia, Defendant-Intervenor.

Civ. A. No. 13856.

United States District Court,
N. D. Georgia,
Atlanta Division.

May 13, 1971.

William J. Brennan, Jr., Robert Dokson, Atlanta, Ga., for Alfred Jernigan.

Harold Sheats and Paul Anderson, Atlanta, Ga., for H. A. Spruill.

Charlie Parker, Jr., Atlanta, Ga., for Economy Exterminating Co.

Arthur K. Bolton, Atty. Gen., Harold N. Hill, Jr., Asst. Atty. Gen., Alfred L. Evans, Jr., Càrl C. Jones, III, A. Joseph Nardone, Jr., Atlanta, Ga., for State of Georgia.

Before BELL, Circuit Judge, and EDENFIELD and HENDERSON, District Judges.

EDENFIELD, District Judge:

This case began as an attack by the plaintiff, Alfred Jernigan, complaining of a pre-judgment seizure of a car by his former employer, Defendant Economy Exterminating Company, pursuant to the Georgia bail trover statutes (Ga.Code Ann. § 107–201 et seq.). The constitutionality of these statutes was attacked for the same reasons relied upon in Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and Hall v. Garson, 430 F.2d 430 (5th Cir. 1970), and cases following them. A three-judge court was convened and a hearing was held on the 26th day of August, 1970.

Before proceeding to the details of the controversy, it is necessary that we delineate the operation of the trover laws in Georgia: In a simple trover proceeding in Georgia there is no final seizure of the property until after final judgment. No attack is made on this simple

trover statute (Ga.Code Ann. §§ 107–101–107) in this case. The Georgia statutes further provide, however, that under certain circumstances the plaintiff, at the time of filing his trover action, may file an affidavit requesting that the property be seized or a bond (bail) required, or that in default thereof the defendant be imprisoned[1] pending the outcome of the case. It is these "bail" statutes which are under attack here. The statutes operate as follows: Having filed his simple petition in trover, the plaintiff may then file with the Clerk an affidavit stating:

(1) That the property is in the possession, custody or control of defendant;

(2) That the plaintiff has reason to apprehend the property has been or will be concealed or will not be forthcoming to answer the judgment made in the primary trover proceeding;

(3) The value of the property and the amount of hire claimed;

(4) That the plaintiff truthfully claims a bona fide interest in the personal property that is the subject of the action.

When the affidavit is filed with the Clerk, the affidavit is affixed to the original trover petition (Ga.Code Ann. § 107–202). The sheriff "or other lawful officer" serving the petition must thereupon perform the following duties:

(1) The officer must take from the defendant a bond for the production of the personal property that is the subject of the action. The bond must be payable to the plaintiff in double the amount sworn to in plaintiff's affidavit. (Ga. Code Ann. § 107–202.)

(2) If the defendant fails to give the security for production of the property, the property is seized by the officer. The property is held by the sheriff until termination of

---

[1]. If plaintiff had complained of detention under these imprisonment sections (Code §§ 107–203–205) the court is of the opinion that their validity could not be upheld under any circumstances. But they were neither invoked nor involved here since the property was both found and seized.

the action unless plaintiff posts a replevy bond. If the plaintiff gives a replevy bond for the property, the property seized may be released to the plaintiff. (Ga. Code Ann. § 107–203.)

(3) If the property is not to be found and cannot be seized by the officer the defendant is committed to jail until the property is produced or the defendant makes a bond with good security. (Ga. Code Ann. § 107–203.)

Release of defendant:

(1) A defendant imprisoned because of his inability to produce bail may seek release by filing with the judge of the court in which the suit is pending a petition under oath which includes the following:

(a) A statement that the defendant is not able to give the security required by law;

(b) A statement that the defendant is not able to produce the property, but can furnish satisfactory reasons for its non-production;

(c) A traverse of the allegations in the plaintiff's affidavit for bail.

(2) The judgment must conduct a summary hearing concerning the defendant's petition after plaintiff has been given reasonable notice (not to exceed five days). The judge must discharge the defendant upon his own recognizance, if the judge finds after the hearing that:

(a) The defendant can neither give the security nor produce the property; and

(b) The reasons for non-production of the property are satisfactory.

If the judge fails to make the findings set out above, the de-

fendant is held in custody. (Ga. Code Ann. § 107–205.)

At the three-judge hearing it appeared without dispute that while the plaintiff Jernigan was employed by Defendant Economy he obtained a car from the company. Plaintiff claims he purchased the car from the defendant and executed a conditional sales contract; he further alleges he was not in default at the time of seizure. The defendant,[2] on the other hand, claims the car was never sold to plaintiff but merely leased to him by Economy.

At the time of the three-judge hearing a dispute arose as to the relationship between the plaintiff and the original defendant and as to the exact nature of the contract between them concerning the automobile. Since it appeared that resolution of these issues would require considerable evidence, the three-judge court heard arguments concerning the facial validity of the bail trover statute and remanded the factual issues for a hearing before a single judge. A full hearing was held by the single judge on February 22, 1971, after which the following findings of fact were made and duly reported to the three-judge panel.

Prior to the events complained of, the plaintiff Jernigan was employed as a salesman for the defendant Economy and needed a car in connection with his work. The employer agreed to make an automobile available to the plaintiff under conditions set forth in a written agreement between them, as follows:

"AUTOMOBILE LEASE PURCHASE AGREEMENT

" STATE OF GEORGIA
COUNTY OF FULTON

"This agreement entered into the day and year hereinafter set out by and between Economy Exterminating Company, Inc., (hereinafter called 'Lessor'), and Alfred Jernigan, (hereinafter called 'Lessee').

---

2. The defendant Economy, being in bankruptcy, never answered the complaint. The State, however, seeking to uphold its statutes, did intervene as a party defendant and has prosecuted the defense throughout.

"Economy Exterminating Company, Inc., the Lessor, does hereby lease and demise to Alfred Jernigan, the Lessee, and the Lessee hires from the Lessor, for and during the full term of 117 weeks from date, subject to the terms and conditions hereinafter set forth, the following property complete, with standard attachments and equipment, delivery and acceptance of which is hereby acknowledged by the Lessee, viz.:

## DESCRIPTION OF AUTOMOBILE

One (1) 2 door Hardtop 1968 Dodge Dart. Manufacturer's I.D. Number LH23 BBB 381609—6 Cyls CAR TOTAL PAYMENTS $1,932.81—33 payments at $58.57 INSURANCE PREMIUM $200.00 per year extra. (add 2 years insurance)

"For the total rental of $2,332.81. Payable as follows: Cash on or before delivery $20.00. Balance of $2,312.80 as follows: Total of 117 weeks or 117 payments at $20.00 per week.

"1.   In the event the Lessee default in any of the above payments, or a proceeding in bankruptcy, receivership or insolvency be instituted against the Lessee or his property the full amount then remaining unpaid shall, at the election of the Lessor, become immediately due and payable. In the event the Lessee should leave the employment of the Lessor for any reason, then all rental payments paid under this agreement are considered forfeited and the company Lessor shall have the right to take immediate possession of the vehicle set out in this agreement.

"2.   Lessee shall give Lessor his promissory note of even date herewith, as evidence but not payment of the installments of rental payable hereunder. This note is to contain a confession of judgment, provision for attorney's fees, a waiver of the issue and service of all process, all benefits of valuation, appraisement and exemption laws, and all rights of appeal and a release of all errors.

"3.   Lessee does further agree that the Lessor shall provide insurance coverage on said vehicle during the term of this lease and that the cost thereof shall be added to the stated total rental of said automobile and shall be paid in the same installments as set out above. Until such time as all of the payments, including those for insurance, are made, the title to said vehicle shall remain in the Lessor.

"4.   Lessee further agrees that at the expiration of this lease he will surrender the said property to the Lessor in as good a condition as when he received it, natural wear excepted, and if upon surrendering the same, the said installments of rental having been fully paid as herein provided, said Lessee desires to purchase said property, the said Lessor agrees to sell the same for the sum of $2332.81.

"5.   The term 'property' whenever used in this lease shall include any equipment, attachment, accessories and repairs placed on said property by the Lessee. No warranties have been made in reference to said property by the Lessor to the Lessee unless expressly written hereon at date of lease.

"6.   Lessee shall pay, and keep said property free and clear of any and all taxes, assessments, liens and encumbrances of any nature whatsoever, shall not use the same improperly or for hire without the written consent of the Lessor, and shall give immediate written notice to the Lessor of any and all loss of, or damage to, said property; in default thereof, the Lessor shall have the right to repossess the property and hold the same pending the maturity of the above obligation, all at the expense and rise of the Lessee which said expense Lessee agrees to pay. The proceeds of any insurance paid by reason of any loss or injury to the property, or any return premium becoming due on the cancellation of any insurance policy on the property shall become subject to the terms hereof, to be applied toward the repair and replacement of the property or pro tanto payment of the above obligation as the Lessor may elect.

"7. In the event of a default of the Lessee in complying with terms of payment hereof, the Lessor may take immediate possession of said property, and for this purpose Lessor may enter upon the premises where said property may be and remove the same; thereupon all rights of the Lessee hereunder in said property and in the payments theretofore made shall terminate absolutely.

"8. The Lessor shall have the right to enforce any one or more remedies hereunder either successively or concurrently, and such action shall not operate to estop or prevent the Lessor from pursuing any other remedy which he may have hereunder, and any repossession or retaking of the property, temporary or otherwise, pursuant to the terms hereof shall not operate to release the Lessee until full amount of the rent has been paid in cash.

"9. The Lessee shall not transfer any interest in this lease, or the property covered thereby without the written consent of the Lessor.

"10. If the Lessor shall at any time deem said lease, said property, or said debt unsafe or insecure, the whole amount remaining unpaid on said negotiable instrument is by said Lessee admitted to be due and payable and said Lessor may at said Lessor's option repossess said property as herein provided.

"IN WITNESS WHEREOF, the parties hereto have signed their names and affixed their seals.

"This 13th day of September, 1969.

ECONOMY EXTERMINATING
COMPANY (LESSOR)
By /s/ Richard R. Smith,
President
Title

/s/ Alfred Jernigan
(LESSEE)

Sworn to and subscribed
before me this 13th day
of Sept., 1969.
/s/ Doris Nickelson
Notary Public
Notary Public, Georgia, State at Large
My Commission Expires Jan. 20, 1971"

Plaintiff Jernigan thereafter voluntarily left defendant's employment by failing to return to work and at the time he left his employment he retained possession of the car. Thereafter, the employer made numerous and repeated efforts to locate both the plaintiff and the car but for several weeks was unable to locate either. When the defendant's agents did locate the plaintiff he refused to surrender possession of the car, though he did offer to continue paying the weekly installments. Plaintiff having refused to surrender the vehicle the defendant thereupon initiated bail trover proceedings under the statutes previously referred to.

With these factual findings made and the issues clarified, the three-judge court now proceeds to a disposition of the case.

█ Without stopping to probe the outer limits of civil rights jurisdiction under 42 U.S.C.A. § 1983 and 28 U.S.C.A. § 1343(3) or similar conflicts as to whether that statute does or does not apply to "property rights" as distinguished from "civil rights", we conclude that, in the present state of the law, this court does have and must exercise jurisdiction under those sections. *See, e. g.,* Hall v. Garson, *supra*; Holloway v. Department of Housing & Urban Development, 418 F.2d 242 (5th Cir. 1969); Mansell v. Saunders, 372 F.2d 573 (5th Cir. 1967); McGuire v. Sadler, 337 F.2d 902 (5th Cir. 1964); Hornsby v. Allen, 326 F.2d 605 (5th Cir. 1964).

█ Nor is the action barred by the anti-injunction statute prohibiting federal injunctions against state court proceedings. In this regard the State urges that at the time this complaint was filed there was already pending in the state court a simple trover action and that all of plaintiff's complaints can be litigated in that proceeding. We do not have to even consider this contention, however, for one simple reason: No attack is made here on the simple trover action or upon the statute under which it was brought. What is under attack is the "bail" requirements which the plaintiff

in that action (original defendant here) caused to be engrafted upon the trover action by the filing of its affidavit to obtain bail. Since the statutes relating to simple trover and the statutes under which bail may be required are entirely separate, and since only the bail provisions are here under attack, there is no "pending state proceeding" with respect to the sections permitting bail to be required, and 28 U.S.C. § 2283 therefore does not apply.

■ The State also urges that the court should abstain from exercising any jurisdiction it may have, citing Reetz v. Bosanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68. That case, however, was based entirely upon the proposition that abstention was in order "where the issue of state law is uncertain" and where a state court construction might make a federal constitutional determination unnecessary. Defendants, however, suggest no state construction which might eliminate the constitutional question here and the court can discern none.

Going to the merits then, the court must decide the naked question whether, under the facts here presented, the plaintiff has standing under *Sniadach, supra,* to challenge the action taken by the defendant employer and, more particularly, whether the statute constitutes a denial of due process as to him.

In approaching these questions, we begin with certain things established:

(1) That the property here involved, unlike that involved in *Sniadach* and *Hall,* was not a "necessity of life", deprivation of which might "drive plaintiff to the wall". On the contrary, the chattel was obviously furnished in this case for the mutual benefit of both parties and primarily for use by the plaintiff in pursuing his employer's business;

(2) Here, again unlike *Sniadach* and *Hall,* there was a written contract between the parties whereby plaintiff voluntarily agreed to surrender the property if he left his employment;

(3) He did leave his employment; and

(4) Instead of returning the property as the contract provided, he hid it or at least kept it in some location where the employer could not find it after repeated efforts.

■ In *Sniadach, supra,* the Supreme Court not only recognized but expressly stated that in some instances summary seizure might well be justified. Under all the facts of this case, we conclude that this is one of those instances. The language of *Sniadach* (relating to prejudgment garnishment of wages) was:

> "Such summary procedure may well meet the requirements of due process in extraordinary situations [citing cases]. But in the present case no situation requiring special protection to a state or creditor interest is presented by the facts; nor is the Wisconsin statute narrowly drawn to meet any such unusual condition." (395 U.S. p. 339, 89 S.Ct. p. 1821.)

If this language means anything it means that *Sniadach* must be applied on a case-by-case basis, not that all summary seizures are automatically condemned. Here a situation requiring special protection to a creditor *is* shown and, moreover, the statute here invoked *is* narrowly drawn [3] to meet an unusual situation, since before a plaintiff may invoke the summary procedure he must first make affidavit *"that he has reason to apprehend that the said personal property has been or will be concealed or moved away, or will not be forthcoming to answer the judgment execution or decree that shall be made in the case * * *."*

3. As recognizing this distinction, *see* Hall v. Garson, 430 F.2d 430 (5th Cir. 1970), at n. 27, where Judge Brown distinguished the statute attacked in *Hall* from the Texas writ of attachment statute which requires showings similar to those required by the statute under attack here.

Here the defendant (plaintiff in trover) did make such an affidavit. What is more, the facts now developed show that his fears were well founded. True, his affidavit was filed with the Clerk, not a judicial officer, but can it be doubted that, in less conclusory terms, he would have sworn the same thing on final trial? [4]

Recently both the Congress and the Court have shown deserving concern that debtors, whether indigent or otherwise, not be oppressed by their creditors; and this court, even if it had the power, would not change one jot nor tittle of what *Sniadach* holds. [5] But bailors and creditors have their rights as well. Used chattels rapidly deteriorate in value and a bona fide creditor who, during a long delay between default in payment and an adversary hearing or final trial, could get neither his money nor his security, might himself be deprived of his property without due process under the guise of according due process to the other side.

Fuentes v. Faircloth, 317 F.Supp. 954 (three-judge, S.D.Fla.1970), and Brunswick Corp. v. J. & P., Inc., 424 F.2d 100 (10th Cir. 1970), would seem to generally support the conclusions here reached. The facts, the statutes and the contracts in those cases were in many respects different, however, and we do not consider them any more in point than *Sniadach* and *Hall, supra*, with one exception:

■ We do rely on *Fuentes* in disposing of plaintiff's claim that the seizure, under the facts here, was illegal under the Fourth Amendment. The plaintiff here suffered no indignity beyond that he consented to by contract when he obtained possession of the vehicle. In our opinion this would control the Fourth Amendment issue irrespective of the application of the statement in Murray's Lessee v. Hoboken Land & Improvement Co., 18 How. 272, at 285, 59 U.S. 272, at 285, 15 L.Ed. 372, that the Fourth Amendment "has no reference to civil procedure for the recovery of debts."

■■ Plaintiff also makes a faint assertion that, as applied to poor persons, the bail trover statutes in question also violate equal protection. We do not see that any equal protection issue is involved. The statutes neither make nor attempt any legislative classification whatsoever but apply to all debtors alike, both rich and poor. Any statute requiring the payment of debts works always more actual hardship on the poor; but surely, where all persons are treated alike, equal protection does not require that a poor person be exempt from all collection statutes simply because it is more difficult for him to pay than for the rich.

■ Finally, the plaintiff asks that his case be treated as a class action on behalf of all defendants in bail trover. Since we deem plaintiff's situation to be unique, the number in his exact category must necessarily be few. His prayer for class action treatment is therefore denied.

For all the reasons assigned, plaintiff's prayers based on the Fourth and Fourteenth Amendments are denied and his complaint dismissed.

---

4. It is true that upon occasion a plaintiff in trover may abuse this statute; in short, he may perjure himself. But perjury would have been a risk even had a pre-seizure hearing been held, and in Georgia those who have abused the statute have frequently paid dearly in the end. *See, e. g.,* Brantley v. Rhodes-Haverty Furniture Co., 131 Ga. 276, 62 S.E. 222 (1908); Woodley v. Coker, 119 Ga. 226, 46 S.E. 89 (1903); Underwood Elliott Fisher Co. v. Evans, 53 Ga.App. 673, 186 S.E. 858 (1936).

5. Georgia, for example, has long prohibited garnishment of wages until after final judgment. Ga.Code Ann. § 46–101.