In re NORTHUMBERLAND MIN. CO.
No. 8880.

District Court, M. D. Pennsylvania.
Aug. 31, 1936.

J. A. Welsh, of Shamokin, Pa., and Penrose Hertzler, of Pottsville, Pa., for petitioners.

George Morrow, R. W. Rymer, and H. R. Vandeusen, all of Scranton, Pa., for respondents.

WATSON, District Judge.

By an agreement with the Fulton Coal Company and the Philadelphia & Reading Coal & Iron Company, owners of certain coal lands, the Northumberland Mining Company was given the exclusive right and privilege of digging, mining, and carrying away anthracite coal that could be mined from certain specified parcels of land, and the right to occupy certain portions of the surface for necessary mining purposes.

The Northumberland Mining Company, by written contract, sold approximately 25,000 tons of coal to Charles Spruks and agreed to store the coal on its property. The Northumberland Mining Company agreed that Spruks could at any time enter the premises where the coal was stored and remove the same.

The Northumberland Mining Company failed to comply with certain provisions of its agreement with the Fulton Coal Company and the Philadelphia & Reading Coal & Iron Company, and the latter two companies, on November 3, 1934, issued landlord's warrants to Robert L. Thomas, a constable, who, on that day levied upon all the personal property on the premises, including the coal purchased by Spruks and stored on the premises.

On November 5, 1934, the Northumberland Mining Company filed a petition for reorganization under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207), and this court thereupon enjoined all persons from enforcing any claim against the debtor. Accordingly, Thomas did not further proceed with the distress proceedings, but filed a petition asking this court to vacate the restraining order so that he could proceed with the levy and make sale of the stored coal bank. The rule now before the court was thereupon granted to show cause why petitioner should not proceed with the sale. Charles Spruks filed an answer to the said petition, averring that he owned one of the coal banks in question and denying that petitioner made a valid levy or had authority to sell his personal property. Upon consideration of the petition and answer, and upon agreement and consent of all the parties in interest, the court entered a preliminary decree, which, in substance, directed that the bank of stored coal owned principally by Spruks, but as to an undetermined portion claimed by the corporation debtor, should be sold by Spruks and the first proceeds received paid to the Philadelphia & Reading Coal & Iron Company and the Fulton Coal Company as a payment for royalties due on said stored coal under the lease agreement between the said coal companies and the debtor corporation, and the proceeds thereafter received not to exceed the sum of $63,446.07, plus lawful poundage thereon, paid into this court and deemed to have been substituted in place of the bank of stored coal. The said sum of $63,446.67 and poundage, or one per cent. commission, has been paid into this court in accordance with said decree.

The question before the court is, whether the Fulton Coal Company and the Philadelphia & Reading Coal & Iron Company, as lessors, had the authority to distrain on coal sold by the lessee to a third person, and stored on the property of the lessee.

■ The general rule is that goods, even of a stranger, are subject to distress while on the demised premises. This principle does not seem to rest on any principle of reason or justice and has been frequently disparaged.

In 1827, Gibson, Ch.J., in Brown v. Sims, 17 Serg. & R. (Pa.) 138, said: "The right to distrain the property of a stranger, rests on no principle of reason or justice; it is a feudal prerogative, handed down from time when chattels were of little account, and when it may have been impolitic, if not unreasonable, to embarrass the lord with responsibility to one who had thrust his property in the way of the remedy to compel a performance of the services. But commerce, which wrought a change in the habits and pursuits of men, and gave an importance to personal transactions, necessarily produced a relaxation of the rule, so as to admit of a variety of exceptions, some of them of early origin, in favor of trade. These have been so often enumerated, that it would be useless to pass them in review here, particularly, as no two of the judges seem to have taken the same view of the principles applicable to them, or of the ground on which they were sustained. But be this as it may, there is little reason to doubt, that the exceptions will, in the end, eat out the rule."

In Weidel v. Roseberry, 13 Serg. & R. (Pa.) 178, Duncan, J., remarked: "That the goods of a stranger found on the premises are liable to distress for rent, is one of the early doctrines of the common law, the reasons of which have long since ceased; it is a doctrine not suited to the transactions of men, and the present state of society, courts of justice themselves are extending the privileges of exemption, to meet the exigencies of the present day; but it transcends judicial power to abrogate it; it is for the wisdom of the legislature to modify and change the law."

Accordingly, the Legislature and the courts have created many exceptions to the rule, such as exemptions from distress for rent due by tenants leasing pianos, melodeons, organs, sewing machines, typewriters, soda water apparatus; electric motors, fans or dynamos; ice cream containers loaned, leased, or conditionally sold. Goods of a boarder or the effects of a guest at an inn are not liable to distress for the host's rent; goods consigned to an agent to be sold on commission are not liable to distress by the landlord of the agent; goods received by a warehouseman, for storage, are not subject to distress for his rent; cattle received on a pasture or farm for the purpose of agistment cannot be levied on for the farm tenant's rent; goods bailed for manufacture or repair are exempt from levy for the bailee's rent; goods in legal custody are exempt; goods on premises after sheriff's sale are exempt from levy for rent of the execution defendant.

■ The general exception in favor of trade as stated by the courts and set forth in 36 C.J. 562, § 1647, is as follows: "In the interest of trade and commerce, it has become a settled rule that, where the tenant in the course of his business is necessarily put in possession of the property of those with whom he deals or those who employ him, such property, although on the demised premises, is not liable to distress for rent due from the tenant." Karns v. McKinney, 74 Pa. 387. In observing this exception, Gibson, Ch.J., in Brown v. Sims, supra, said: "Where the course of the business must necessarily put the tenant in possession of the property of his customers, it would be against the plainest dictates of honesty and conscience, to permit the landlord to use him as a decoy and pounce upon whatever should be brought within his grasp, after having received the price of its exemption in the enhanced value of the rent."

The application of the exception in favor of trade must be made in the light of present-day trade and business. The trend of decisions, due to the exigencies of business, has been to broaden the scope of this exception. Manufacturers' Finance Acceptance Corp. v. Jordan Distributors, Inc., 111 Pa.Super. 448, 170 A. 321. This court feels that the scope of the exception will not be broadened in holding as it does that the facts in the present case come within the exception. In mining coal, as it had the right to do under the lease, the Northumberland Mining Company could not continue business unless it dealt with others to dispose of the coal mined. Due to the exigencies of transportation and market conditions, it frequently happens that coal

must be stored on the surface both before and after sale. In the interest of trade and commerce, coal sold by the tenant mining company, but stored and not removed by the purchaser, should not be subject to levy by the landlord. Accordingly, this court holds that the petitioner had no authority to levy on the coal owned by Spruks or to make sale thereof on a landlord's distress warrant; that the fund in court, representing the proceeds of the said coal, which was owned by Spruks, must be paid to Spruks, the respondent.

Now, the rule heretofore granted on November 28, 1934, is discharged as to the Northumberland Mining Company and Charles Spruks, and the clerk of the United States District Court for the Middle District of Pennsylvania is hereby directed to pay over to Charles Spruks the sum of $64,080.53, less one per cent. clerk's commission for receiving and disbursing.