Alice **STUCKERS**

v.

**Larry THOMAS and Richard H. Schmitz, d/b/a Gregory Body Shop.**

**No. CIV73–3046.**

United States District Court,
D. South Dakota.

April 4, 1974.

Stephen L. Pevar, South Dakota Legal Services, Mission, S. D., for plaintiff.

Wally Eklund, Johnson & Johnson, Gregory, S. D., for defendant.

## MEMORANDUM OPINION.

BOGUE, District Judge.

The plaintiff has filed this declaratory judgment action pursuant to 28 U.S. C. §§ 2201, 2202, seeking to have this Court adjudicate the constitutionality of two sections of the South Dakota Compiled Laws. Those sections are S.D. Comp.Laws Ann. § 21–18–10 and S.D. Comp.Laws Ann. § 21–18–12. The plaintiff has filed a Motion for Summary Judgment, briefs have been prepared and filed by each party and the motion is now in a posture for decision. For the reasons stated hereinafter, and regardless of the highly questionable conduct on the part of the plaintiff herein this Court concludes that those statutes do not comply with constitutional dictates.

The facts in this case can be stated very briefly. The plaintiff in this action, Alice Stuckers, took her automobile to the defendants who operate a business in the city of Gregory, South Dakota. The business is commonly referred to as a body and fender repair business. The plaintiff had some trouble with her automobile which required that it be towed from a ditch outside Gregory to the defendant's shop. Several repairs were conducted upon the

car's suspension system. After some discussion as to the amount of the bill owed to the defendant, the plaintiff paid her bill by check and removed her car from the defendant's possession. The defendants deposited the check to their account. In due course the check was returned to the defendants with notations upon it showing that the plaintiff had stopped payment upon the check. Eventually the defendants herein served a garnishee summons and affidavit upon the Rancher's National Bank alleging that the plaintiff herein was indebted to them in the amount of $214.30. No prior notice of such service was given to the plaintiff herein and there was admittedly no opportunity for a prior hearing. At the time of the service of the garnishee summons upon the bank, the bank had in its possession some $257.51 belonging to the plaintiff herein. Pursuant to S.D. Comp.Laws Ann. § 21–18–12, the entire amount of the plaintiff's account was garnished even though the amount was in excess of the amount claimed. On a later date the plaintiff herein, unaware that her account had been garnisheed, deposited another check into her account in the amount of $175, which amount was also garnisheed. The plaintiff later commenced this action seeking to have the garnishee procedure used and effected in this matter declared by this Court to be constitutionally infirm. The plaintiff seeks relief in this lawsuit pursuant to 42 U.S.C. § 1983. That being the case, the plaintiff must prove two elements in order to prevail: one, that she was deprived of a constitutional right by the defendants; and two, the defendants acted "under color of state law." See, Adickes v. Kress, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The plaintiff has not sought an injunction restraining the enforcement of operation or execution of any state statute, so that this Court may proceed without empanelling a three-judge district court pursuant to 28 U.S.C. § 2281. A declaratory judgment concededly is a proper remedy in this situation.

## STATUTORY GARNISHMENT SCHEME

This Court feels that it should set out the statutory procedure for prejudgment garnishment in South Dakota. The procedures are found in the South Dakota Compiled Laws Ann. ch. 21–18. Prejudgment garnishment is available to all persons claiming damages founded upon a contract, express or implied. S.D. Comp.Laws Ann. § 21–18–1. Once a summons in the *contract action* has been issued, the plaintiff garnishor may make an affidavit stating that he believes a third party garnishee possesses property of the defendant's. S.D.Comp.Laws Ann. § 21–18–3. This affidavit is annexed to a garnishee summons and served upon the garnishee. S.D.Comp. Laws Ann. §§ 21–18–6 and 21–18–7. Once the summons and affidavit are served upon the garnishee, such garnishee stands liable to the garnishor plaintiff to the amount of all property under the garnishee's control belonging to the defendant and he is required to hold this property until an order of the court instructs him to do otherwise. S. D.Comp.Laws Ann. §§ 21–18–12 and 21–18–33. The garnishee summons and affidavit must be served upon the defendant in the contract action "either before or within ten days after service on the garnishee . . ." S.D.Comp. Laws Ann. § 21–18–10. In effect, then, once the *contract action* has been commenced the plaintiff can cause property belonging to the defendant in such contract action and in possession of a third party to be garnisheed until released by order of the court. This garnishment can be effectuated without the opportunity of prior notice or hearing and property in excess of the debt allegedly owed can be garnisheed in a like manner. S. D.Comp.Laws Ann. §§ 21–18–10 and 21–18–12. The effect of such garnishment procedures is to completely deprive the defendant in the contract action of the use and enjoyment of his property which is in the possession of another without notice or an opportunity for a hearing.

## DUE PROCESS

In the last few years we have witnessed a reexamination of summary creditors' rights in light of the dictates of the Fourteenth Amendment due process clause. The Fourteenth Amendment guarantees that no state shall deprive any person of property without due process of law. Among other things, the United States Supreme Court has interpreted this clause to mean that no person may be deprived of any significant property interest without being afforded the opportunity of a meaningful hearing before such deprivation occurs. *See generally,* Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Sniadach v. Family Finance Co., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1970). Perhaps the two most significant cases that apply to the issue herein are the *Sniadach* and *Fuentes* opinions.

In 1969 the United States Supreme Court decided the case of Sniadach v. Family Finance Corp., *supra.* That case reviewed the prejudgment garnishment procedures employment by the statutory scheme set up in the state of Wisconsin. The Wisconsin statute is highly similar to the procedures employed in the state of South Dakota. A summons was served upon the garnishee which had the effect of freezing the defendant's assets in the hands of the garnishee. The garnishee summons had to be served upon the contract defendant within ten days of the service of the summons upon the garnishee. The garnishment served to deprive the defendant of the use and enjoyment of his or her property pending the outcome of the lawsuit. The Supreme Court said:

"Where the taking of one's property is so obvious, it needs no extended argument to conclude that absent notice in a prior hearing (citation omitted) this prejudgment garnishment procedure violates the fundamental principles of due process." 395 U.S. 337, 342, 89 S.Ct. 1820, 1823.

In 1972 the United States Supreme Court decided the case of Fuentes v. Shevin, *supra.* That case involved challenges to the constitutionality of the Florida and Pennsylvania prejudgment replevin statutes. The Supreme Court made several statements which shed light upon our problem herein. The Court said:

"If the right to notice and hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented. At a later hearing, an individual's possessions can be returned to him if they were unfairly or mistakenly taken in the first place. Damages may even be awarded to him for the wrongful deprivation. But no later hearing and no damage award can undo the fact that an arbitrary taking that was subject to the right or procedural due process has already occurred. 'This Court has not . . . embraced the general proposition that a wrong may be done if it can be undone.'" 407 U.S. 67, 81–82, 92 S.Ct. 1983, 1995.

And later in the *Fuentes* opinion, the Court said:

"While the length and consequent severity of a deprivation may be another factor to weigh in determining the appropriate form of hearing, it is not decisive of the basic right to a prior hearing of some kind." 407 U.S. 67, 86, 92 S.Ct. 1983, 1997.

And later the Supreme Court gave the following discussion upon the nature of the underlying action or dispute:

"If it were shown at a hearing that the appellants had defaulted on their contractual obligations, it might well be that the sellers of the goods would be entitled to repossession. But even assuming that the appellants had fallen behind in their installment payments, and that they had no other valid defenses, that is immaterial here. The right to be heard does not depend upon an advance showing that one will surely prevail at the hearing. To one who protests against the taking of his

property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits. It is enough to provoke the procedural safeguards of the Fourteenth Amendment that a significant property interest is at stake, whatever the ultimate outcome of a hearing on the contractual right to continued possession and use of the goods." 407 U.S. 67, 87, 92 S.Ct. 1983, 1997.

And finally, the Supreme Court discussed the extraordinary situation exception to the due process requirement of an opportunity for a hearing:

"There are 'extraordinary situations' that justify postponing notice and opportunity for a hearing (citation omitted). These situations, however, must be truly unusual. Only in a very few limited situations has this Court allowed outright seizure without opportunity for a hearing. First, in each case the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the state has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance. Thus, the Court has allowed summary seizure of property to collect the Internal Revenue of the United States, to meet the needs of a national war effort, to protect against the economic disaster of a bank failure, and to protect the public from misbranded drugs and contaminated food." 407 U.S. 67, 90–92, 92 S.Ct. 1983, 1999.

These are the standards against which the prejudgment garnishment statutes as set forth in S.D.Comp.Laws, ch. 21–18 must be measured against. There is no question in this Court's mind but that S.D.Comp.Laws Ann. § 21–18–10 violates on its face the dictates of *Sniadach* and *Fuentes*. The statute provides that a person can be deprived of his property presently in the possession of another without notice and without the opportunity of a prior hearing. Clearly the statute is not drawn with such precision as to bring it within the extraordinary circumstances exception as expressed above in the *Fuentes* decision. This Court does not stand alone in such opinion. *See,* Western Coach Corp. v. Shreve, 344 F.Supp. 1136 (D.Ariz. 1972), aff'd 475 F.2d 754 (9th Cir. 1972); Schneider v. Margossian, 349 F. Supp. 741 (D.Mass.1972); Aaron v. Clark, 342 F.Supp. 898 (N.D.Ga.1972); McClellan v. Commercial Credit Corp., 350 F.Supp. 1013 (D.R.I.1972); Larson v. Featherstone, 44 Wis.2d 712, 172 N. W.2d 20 (1969); Jones Press, Inc. v. Motor Travel Services, Inc., 286 Minn. 205, 176 N.W.2d 87 (1970); Randone v. Appellate Court, 5 Cal.3d 536, 96 Cal. Rptr. 709, 488 P.2d 13 (1971) cert. den., 407 U.S. 924, 92 S.Ct. 2452, 32 L.Ed.2d 811 (1971). In addition, Chief Judge Nichol of this District has intimated the result of this lawsuit in the case of Cook v. Carlson, 364 F.Supp. 24 (D.S.D.1973), when he said:

"Where an individual is completely deprived of the use and enjoyment of that property there is no question. Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969)." 364 F.Supp. 24, 25.

There is no question but that S.D. Comp.Laws Ann. § 21–18–10 allows a creditor to deprive a debtor of a significant property interest, funds in a bank account in this case, without prior notice or opportunity for a prior hearing. Such clearly does not follow the dictates of the due process clause of the Fourteenth Amendment of the United States Constitution.

## COLOR OF STATE LAW

This Court's opinion above has demonstrated that S.D.Comp.Laws Ann. § 21–18–10 deprives the plaintiff of her constitutional due process rights. However, to secure relief pursuant to 42 U. S.C. § 1983, the plaintiff must demon-

strate that the defendants acted under color of state law. Adickes v. Kress, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L. Ed.2d 142 (1970). The state of South Dakota must have significantly involved itself in causing the plaintiff's deprivation of rights. *See,* Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972).

No state employee or official was directly involved in the seizure of the plaintiff's bank account in the case herein. However, such direct involvement is unnecessary to find state action. *See,* Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 178–179, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); Hall v. Garson, 430 F.2d 430 (5th Cir. 1970). This Court feels that the *Garson* case disposes of the state action issues herein. The plaintiff in *Garson* challenged the constitutionality of a Texas landlord's lien statute which allowed the landlord to enforce the lien by the seizure of property. The defendant contended an absence of jurisdiction under 42 U.S.C. § 1983 due to a lack of any state action. The Court disposed of this contention by stating:

> "In this case the alleged wrongful conduct was admittedly perpetrated by a person who was not an officer of the state or an official of any state agency. But the action taken, the entry into another's home and the seizure of another's property, was an act that possesses many, if not all, of the characteristics of an act of the State. The execution of a lien, whether a traditional security interest or a quasi writ of attachment or judgment lien has in Texas traditionally been the function of the Sheriff or constable. Thus Article 5238a vests in the landlord and his agents authority that is normally exercised by the state and historically has been a state function.
> "Since United States v. Classic, 313 U.S. 299 [61 S.Ct. 1031, 85 L.Ed. 1368], (1941), a case involving irregularities in the conduct of a state Democratic party primary, the question of state action has been whether the alleged wrongdoer *was dressed with state authority*. As Mr. Justice Stone said in *Classic,* the misuse of power 'possessed by virtue of state law and made possible only because the wrong-doer is clothed with authority of state law, is state action taken "under color of state law" '." (Emphasis added) 430 F.2d 430, 439.

Certainly the garnishee, summons and affidavit were issued and clothed with the authority of state law. In addition, the seizure of property is a power normally exercised by state officials. *See,* e. g., S.D.Comp.Laws Ann. chs. 21–15 (claim and delivery), 21–17 (attachment), 21–21 (receivership), 15–18 (execution of judgments). In performing the function as set out in S.D.Comp. Laws ch. 21–18 an individual performs functions under color of state law and by authority of state statute. In addition S.D.Comp.Laws Ann. § 21–18–12 provides sanctions against the garnishee should he not follow the procedures outlined in the prejudgment chapter of the state laws. There is no question in this Court's mind but that the prejudgment garnishment procedures employed by the defendant herein, were done under color of state law as is required by 42 U.S.C. § 1983. It should be noted that these very same procedures were used in the case of Sniadach v. Family Finance Corp., *supra.* In that case the Supreme Court clearly held that the constitutional protections afforded by the Fourteenth Amendment applied to this type of situation, implying without saying that the prejudgment garnishment therein was taken by virtue of state action.

## CONCLUSION

As discussed above, this Court feels that the operation of S.D.Comp.Laws Ann. ch. 21–18 involves a significant involvement by the state of South Dakota and clearly constitutes action under color of state law. In addition, the procedures set out in that chapter clearly call for a deprivation of a significant property interest without prior notice and opportunity for a hearing. The statutes in question are not narrowly drawn to limit this remedy to exceptional circumstances where a substantial governmen-

tal or public interest is involved. That being the case, it is this Court's opinion that the statutory procedures involved, namely, S.D.Comp.Laws Ann. § 21–18–10 do not conform with the dictates of the due process clause of the Fourteenth Amendment to the United States Constitution as interpreted in the cases of Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) and Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

In light of this Court's opinion above, this Court does not feel that it is necessary at this time to pass upon the constitutionality of S.D.Comp.Laws Ann. § 21–18–12 which provides for a pre-judgment garnishment in excess of the amount claimed. While this Court has serious doubts about the constitutionality of such a statute, this decision is in line with the traditional policy of avoiding unnecessary constitutional adjudications.

This Memorandum Opinion shall constitute this Court's findings of fact and conclusions of law. The plaintiff herein shall forthwith prepare the necessary papers to effectuate this decision.