Madonia PETTIGREW, Plaintiff,

v.

William WOMBLE, Magistrate of Richland County, South Carolina, in his official capacity; Frank Powell, Sheriff of Richland County, South Carolina, in his official capacity; and Louise Jordan and Palms Apartments, d/b/a Southmark Management, Smyrna,

Georgia, individually and in their official capacities, Defendants.

Civ. A. No. 83–2522–15.

United States District Court,
D. South Carolina,
Columbia Division.

May 22, 1984.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Anne McClain Johnson, Herbert E. Buhl, III, Columbia, S.C., for plaintiff.

John M. Williamson, III, T. Travis Medlock, Atty. Gen., Charles W. Gambrell, Jr., Columbia, S.C. for defendants.

HAMILTON, District Judge.

The plaintiff, Madonia Pettigrew, instituted the instant action pursuant to the provisions of 42 U.S.C. § 1983, 28 U.S.C. §§ 1343(3) and (4), and 28 U.S.C. § 2201 and § 2202 to obtain declaratory relief and damages to redress the deprivation of rights secured under the Fifth and Fourteenth Amendments to the United States Constitution and under the South Carolina

Constitution. Specifically, the plaintiff contends that the provisions of § 27–39–250 of the South Carolina Code of Laws 1976, as amended, are violative of the United States constitutional guarantees of procedural due process, equal protection, and substantive due process. Additionally, the plaintiff contends that § 27–39–250 contravenes the substantive due process protection afforded by Article I, Section 13 of the South Carolina Constitution, which proscribes the taking of private property for private use without the consent of the owner. She also asserts that the distraint of property merely found on rental premises which does not belong to the tenant, pursuant to § 27–39–250, is violative of the South Carolina Supreme Court decisions of *Fidelity Trust and Mortgage Company v. Davis*, 158 S.C. 400, 155 S.E. 622 (1930); *Burnett v. Boukedes*, 240 S.C. 140, 125 S.E.2d 10 (1962); and *Frady v. Smith*, 247 S.C. 353, 147 S.E.2d 412 (1966).[1]

Section 27–39–250, is a part of South Carolina's statutory scheme which codifies a landlord's common-law right to distrain property of a tenant for the payment of overdue rent. §§ 27–39–210—360 South Carolina Code of Laws 1976, as amended. The statutes provide the procedure by which the property may be distrained including provisions for notice to the *tenant* and an opportunity for the tenant to attend a predistress hearing. §§ 27–39–210—220 South Carolina Code of Laws 1976, as amended. However, § 27–39–250 provides for the distraint of the property of third persons found on the premises without notice or opportunity for a hearing as follows:

> If any property so distrained be not the property of the tenant the tenant shall immediately name the owner thereof and inform the officer of such ownership and the officer shall distrain sufficient other property of the tenant to pay the rent and costs. But though property of the tenant shall be first applied to payment of the rent and costs all property upon the rented premises shall be subject to

distress as herein provided, except property mentioned in § 27–39–230.

On April 6, 1984, the parties agreed to submit the case to the court on briefs and a stipulation of facts. After reviewing the stipulation, the briefs and exhibits, and studying the applicable law, this court makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure. The court notes that to the extent any of the following findings of fact constitute conclusions of law, they are adopted as such and to the extent any conclusions of law constitute findings of fact, they are so adopted.

### FINDINGS OF FACT

The following relevant facts have been stipulated to by the parties and were filed with the court on May 4, 1984. The court does hereby adopt the stipulation as its findings of fact as follows:

The parties stipulate to the following facts and agree that the court may determine this matter upon these stipulated facts, the exhibits submitted herewith, and the briefs of the parties.

1. Plaintiff Madonia Pettigrew is an adult citizen of the United States and resident of Richland County, South Carolina, residing at 1511 Carteret Street, Columbia, South Carolina.

2. Defendant William Womble is the duly elected, qualified, and acting Magistrate for Richland County, South Carolina. He is responsible for the commencement and supervision of proceedings for collection of rent by distress pursuant to Title 27, Chapter 39, Section 210 *et seq.* of the Code of Laws of South Carolina of 1976 as amended. He is sued in his official capacity.

3. Defendant Frank Powell is the duly elected, qualified, and acting Sheriff of Richland County, South Carolina, and is responsible for enforcing and carrying out the provisions of Title 27, Chapter 39, Section 250 of the South Carolina Code of

---

**1.** The court is advised by counsel for the plaintiff that she will not pursue the fifth cause of action stated in the complaint, that of intentional infliction of emotional distress.

Laws of 1976 as amended. He is required to enforce distress warrants, seize the personal property on the premises, and conduct a public auction of the personal property. He is sued in his official capacity.

4. Defendant Louise C. Jordan at all times pertinent to this action is the resident manager of Palms Apartments, Percival Road, Columbia, South Carolina. She was responsible for the management and the supervision of Palms Apartments, and was authorized to commence proceedings for collection of rent by distress. She is sued in her individual and in her official capacity.

5. Defendant Palms Apartments d/b/a Southmark Management of Smyrna, Georgia, a Texas corporation, is a housing management company operating a 712 Apartment multi-unit apartment housing complex on Percival Road, Columbia, South Carolina.

6. At all times pertinent herein, defendants have acted under color of state law, custom, or usage.

7. On or about February 15, 1979, plaintiff entered into a consumer credit contract with Cate McLaurin of Columbia for the purchase of one MGA E–200 Stereo System. This contract was subsequently assigned to General Electric Credit Corporation of Atlanta, Georgia.

8. On or about August 16, 1983, a Notice of Predistress Hearing and Affidavit was served on John Dixon at the Palms Apartment. This Notice, attached hereto as Exhibit # 2, required Mr. Dixon to appear at a hearing on August 22, 1983. Mr. Dixon did not appear at that hearing.

9. Sometime during the last week of August, 1983, plaintiff loaned the stereo to her brother, John Dixon, who at the time was residing at the Palms Apartments, Percival Road, Columbia, South Carolina.

10. That Joanne Walter, Agent of and on behalf of defendants Palms Apartments and Southmark Management, commenced eviction proceedings against Mr. Dixon on September 16, 1983, and had the distress warrant issued under which plaintiff's stereo was taken.

11. On or about September 16, 1983, Mr. Dixon was evicted from his apartment for non-payment of rent. Mr. Dixon was served with a Distress Warrant dated September 16, 1983, a copy of which is attached hereto as Exhibit 7. Plaintiff's stereo was taken pursuant to a distress warrant requested by Joanne Walter, agent of Palms Apartments and issued by defendant Womble as authorized by § 27–39–210 *et seq.* of the Code of Laws of South Carolina of 1976, as amended and executed by defendant Sheriff Powell by his agent Deputy Sheriff, Golie A. Augustus pursuant to the order of defendant, Womble.

12. The apartment of John Dixon contained non-exempt, personal property (other than the stereo which was seized) upon which distress could have been levied.

13. Plaintiff was informed of the eviction about September 16, 1983, by her sister, Iretha Chapman. Mrs. Chapman also informed plaintiff that the above mentioned stereo had been taken in compensation for Mr. Dixon's non-payment of rent.

14. On or about September 17, 1983, plaintiff went to the business offices of Palms Apartments and spoke with a Ms. Brown concerning the seizure of her stereo. Ms. Brown was unable to assist plaintiff in the matter and suggested she return during the week to speak with the manager.

15. Plaintiff returned to Palms Apartments on or about September 19, 1983, and spoke with the resident manager, defendant Jordan, about the taking of her stereo. Defendant Jordan stated that she had the right to take whatever property she wanted as reimbursement for the non-payment of Mr. Dixon's rent. Plaintiff requested to see any and all papers which gave defendant the right to confiscate her stereo. Defendant Jordan informed plaintiff that all papers were at defendant Womble's office.

16. Plaintiff went to defendant Womble's office on or about September 19, 1983, in an attempt to secure the return of her

stereo. Plaintiff spoke with Ms. Tina Marie Shaw, who is employed at defendant Womble's office. Ms. Shaw informed plaintiff it would be necessary for her to bring in copies of the financing statement filed with the Richland County RMC before defendant Womble would release her property.

17. Plaintiff was unable to obtain a financing statement for her stereo due to the fact that the sale was a purchase money security interest under § 36-9-107 of the Code of Laws of South Carolina of 1976 as amended and that no finance statement need be filed in order to perfect the security interest.

18. Plaintiff returned to the defendant Womble's office with a copy of the contract between plaintiff and Cate McLaurin which showed that plaintiff was the true owner of the stereo. Ms. Shaw instructed plaintiff to call on Monday, September 26, 1983, to discuss the matter directly with defendant Womble.

19. Plaintiff contacted Ms. Shaw on September 26, 1983. Ms. Shaw informed plaintiff that defendant Womble had stated that the stereo was still scheduled to be sold and plaintiff could only secure the return of her stereo by bidding on it and buying it back at the public sale.

20. Plaintiff was never informed by any of the defendants that her property was to be sold at public sale by defendant Powell on October 3, 1983. Plaintiff only became aware of this sale after she notified defendant Womble's office that she was the true owner of the stereo and saw the Notice of Sale posted in his office. Plaintiff never received personal notice prior to the seizure of her property nor did plaintiff receive any hearing to determine the ownership of the personal property seized.

21. The defendant Womble has issued approximately 560 distress warrants during the past two years.

22. The defendant, Palms Apartments initiated 40 to 50 distress warrants during the past two years.

23. The defendant Powell served approximately 1,367 distress notices in 1983.

24. That defendant Palms Apartments and Southmark Management have returned the MGA stereo to the plaintiff on the 6th of April, 1984.

25. That the defendants Louise C. Jordan, Palms Apartments and Southmark Management and plaintiff have stipulated that should the court determine that the distress statute is unconstitutional, the plaintiff shall be awarded the sum of Seven Hundred Fifty Dollars ($750.00) as damages.

26. Plaintiff owed no rent, received no service and had no contractual relationship with defendants, Palms Apartments and Louise Jordan.

27. Plaintiff's personal property would have been sold at public sale except for the commencement of this action.

28. That the parties stipulate that defendant Frank Powell and defendant Womble shall be immune from all claims for damages by the plaintiff.

29. The parties stipulate that the following facts are contested:

(a) Plaintiff asserts that John Dixon, the tenant, neither affirmed nor denied ownership of plaintiff's stereo.

(b) Defendants assert that John Dixon, the tenant, affirmed that he owned the stereo which was seized by the deputy sheriff on September 16, 1983, when questioned by the deputy sheriff.

30. The parties stipulate that the following joint exhibits shall be submitted as evidence and are attached to these stipulations.

1. Application for Ejectment.
2. Notice of Predistress Hearing and Affidavit
3. Writ of Ejectment.
4. Affidavit of Joan Walter.
5. Writ of Possession.
6. Rule to Vacate or Show Cause.
7. Distress Warrant.
8. Notice of Public Sale.

9. Rental Agreement.

10. Contract between plaintiff and Cate McLaurin.

11. Defendants' Answer to Plaintiff's Interrogatories.

12. Deposition of Plaintiff.

## CONCLUSIONS OF LAW

### A. Jurisdiction

 The court has jurisdiction of the instant action pursuant to 42 U.S.C. § 1983, 28 U.S.C. §§ 1343(3) and (4) and 28 U.S.C. § 2201 and § 2202. *Lynch v. Household Finance Corp.*, 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972); and *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).[2] The defendants contend in their brief to the court that the facts of this case do not present an actual controversy as is required by the Declaratory Judgment Act, 28 U.S.C. § 2201 and § 2202. While it is true that the Declaratory Judgment Act does not independently confer federal jurisdiction on this court in the absence of an actual controversy, *Red Lobster Inns of America, Inc. v. New England Oyster House, Inc.*, 524 F.2d 968 (5th Cir.1975), it is well established that once jurisdiction is established under 28 U.S.C. § 1343, the separate remedy available through declaratory judgment may also proceed. *Gay Student Services v. Texas A and M University*, 612 F.2d 160 (5th Cir.1980). *See also, Chertkof v. Mayor and City Council of Baltimore*, 497 F.Supp. 1252 (D.Md. 1980); and *Stv ˜kers v. Thomas*, 374 F.Supp. 178 (D.S.D.1974). The plaintiff herein has stated a cognizable claim for the deprivation of her constitutional rights pursuant to 42 U.S.C. § 1983 and therefore, the court will also address her request for declaratory relief pursuant to 28 U.S.C. § 2201 and § 2202.

 The defendants also propose that the plaintiff, Madonia Pettigrew, lacks standing to challenge the constitutionality of § 27–39–250. The defendants' position is wholly without merit. The defendants contend that the plaintiff's brother, John Dixon (i.e. the tenant herein), affirmatively represented to the Deputy Sheriff at the time of seizure that he, in fact, owned the stereo.[3] Because of this alleged representation, the defendants contend that there was no "third party seizure" and therefore, no application of § 27–39–250. However, on September 17, 1983, just one day after the distraint, the plaintiff notified a Ms. Brown of the Palms Apartment of her ownership interest. On September 19, 1983, the plaintiff spoke with the resident manager, defendant Jordan and also with Ms. Tina Marie Shaw of Magistrate Womble's office about her ownership of the stereo. After obtaining a copy of her contract with Cate McLaurin, the seller of the stereo, which showed Ms. Pettigrew to be the owner of the stereo, she returned to Magistrate Womble's office. On September 26, 1983, Ms. Shaw informed the plaintiff that the stereo was still scheduled to be sold at public sale. Ms. Pettigrew was deprived of the possession of her property, despite informing the defendants of her ownership, from September 16, 1983, until April 6, 1984.[4] The court concludes that the defendants held the property under the authority to distrain the property of third persons as set forth in § 27–39–250.

2. The Civil Rights Act, 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution or law, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

3. As previously set forth, the plaintiff contends that her brother made no representations whatsoever as to ownership of the stereo. Finding of Fact # 29.

4. Due to the institution of the instant suit, the stereo was not sold at public sale as scheduled for October 3, 1983, and was returned to the plaintiff on April 6, 1984.

Perhaps at the actual time that the Deputy Sheriff seized the stereo he was of the opinion that no "third party seizure" was in effect. However, once the plaintiff alerted the defendants of her ownership, they, by necessity, had to be holding her property and intending to sell it pursuant to the authority of § 27–39–250. Absent that statutory provision, under the law of South Carolina the defendants would have had no authority whatsoever to distrain property not owned by the tenant. *Fidelity Trust and Mortgage Company v. Davis*, 158 S.C. 400, 155 S.E. 622 (1930); *Burnett v. Boukedes*, 240 S.C. 144, 125 S.E.2d 10 (1962); and *Frady v. Smith*, 247 S.C. 353, 147 S.E.2d 412 (1966). Accordingly, the court concludes that Ms. Pettigrew indeed has standing to challenge the statute. *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

Additionally, the defendants contend that this court should abstain from rendering any substantive decision in this case until the South Carolina Supreme Court can hear arguments on the matter. The defendants urge the court to certify the issues involved herein to that court pursuant to Rule 46 of the Rules of the Supreme Court of South Carolina noting that under the Pullman abstention doctrine a federal court should not pass on the constitutionality of a state statute when there are questions of state law which may be dispositive of the case. *Railroad Com. of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

■ Concededly, abstention of the Pullman type has repeatedly been ordered by the United States Supreme Court. As noted by the defendants, the Court ruled in the 1976 case of *Carey v. Sugar*, 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587, that a three-judge panel of the District Court for the Southern District of New York should have abstained from deciding that New York statutes providing for prejudgment attachment were unconstitutional pending a construction by the New York state courts. However, in *Carey*, the statutory scheme challenged provided that a defendant could discharge an attachment by giving an undertaking in an amount equal to the value of the property attached or by successfully moving to vacate the attachment under § 6223 of New York Civil Practice Laws and Rules (Supp.1975–1976). The Supreme Court ordered abstention in light of several New York Court of Appeals decisions holding that attachment may be vacated if it clearly appears that the plaintiff would ultimately fail on the merits and in light of the New York officials' contention that state law provided an opportunity for a preliminary hearing on the merits. The court is of the opinion that *Carey* is not controlling in the instant case because under no conceivable construction of § 27–39–250 or any of the provisions of §§ 27–39–210—360 is a third party entitled to notice or hearing *prior* or *subsequent* to the distraint of his property. As in the instant case, a third party asserting ownership rights in the seized property is *never* given an opportunity to be heard except perhaps by way of bidding for the property at public sale.

■ When it is clear that a state statute is unconstitutional regardless of the construction a state court might give it, abstention is not required. *Kusper v. Pontikes*, 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973); *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); and *Harman v. Forssenius*, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965). The doctrine of abstention remains an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it, *Miofsky v. Superior Court of State of California In and For Sacramento County*, 703 F.2d 332 (9th Cir.1983) and numerous courts have held that cases involving vital questions of civil rights are, in fact, the least likely candidates for the exercise of abstention. *Jones v. Metzger*, 456 F.2d 854 (6th Cir.1972); *Wright v. McMann*, 387 F.2d 519 (2nd Cir.1967); *Moreno v. Henckel*, 431 F.2d 1299 (5th Cir.1970); and *Canton v. Spokane School Dist. No. 81*, 498 F.2d 840 (D.C.Wash.1974). Accordingly, this court

declines to abstain and will proceed to determine the case on its merits.[5]

### B. Constitutionality of § 27–39–250

Under § 27–39–250 a landlord may distrain the property of third persons which happens, at the time of the seizure, to be on the tenant's premises. If, at that time, the tenant comes forward and identifies a third party owner, the statute merely provides that "the officer shall distrain sufficient other property of the tenant to pay the rent and costs." However, if there is not existing sufficient other property of the tenant, the statute provides that "*all* property upon the rented premises shall be subject to distress." (emphasis added). The statute has absolutely no provision for notice of the intended distraint to be given to a third party if identified by the tenant prior to the actual seizure nor any provision for a post seizure hearing should, as the plaintiff did herein, a third party come forward with proof of ownership after the actual seizure but prior to the public sale of the distressed goods.

The defendants argue that § 27–39–250 is not violative of due process because it must be read in conjunction with § 27–39–210. That section provides that a magistrate, upon receipt of the landlord's affidavit setting the amount of rent due, may issue a notice to the tenant stating the amount due and fixing a time and place for a predistress hearing. Section 27–39–210 in no way provides that notice shall be sent to any third party who is known to the landlord at that time and who possesses property on the premises nor does it provide at *any time* a right for a third party to be heard as to its ownership rights. Indeed, most third party owners probably are afforded about as much consideration of their property rights as was the plaintiff herein.[6]

As set forth by Justice Stewart in *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972):

> The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decisionmaking when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment to minimize substantively unfair or mistaken deprivations of property, a danger that is especially great when the State seizes goods simply upon the application of and for the benefit of a private party. So viewed, the prohibition against the deprivation of property without due process of law re-

---

**5.** The court would like to note that the stipulations of the parties numbered six (6) (conceding that the acts of the defendants were "under color of state law" as required by 42 U.S.C. § 1983) and twenty-eight (28) (stipulating that the defendants Powell and Womble shall be immune from all claims for damages) pose no problems under the rationale of *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). *Lugar* explored the relationship between the requirement of "state action" to establish a violation of the Fourteenth Amendment, and the "under color of state law" requirement needed to establish a right to recover under 42 U.S.C. § 1983. There, as is presently the case here, a plaintiff sued private individuals for damages resulting from their resort to a state statute which was alleged to be procedurally defective under the Due Process Clause. The Court held there that the defendants had acted under color of state law in their participation in the prejudgment attachment and that insofar as the debtor had chal-

lenged the constitutionality of the statute, he had presented a valid cause of action under the 1871 civil rights statute.

**6.** The facts reveal that Ms. Pettigrew, after producing proof of her ownership of the stereo, never even had an opportunity to speak with Magistrate Womble, but instead was informed by the magistrate's secretary that the property would be sold at auction:

> Q. And she told you to come back to see Judge Womble.
> A. She told me to call her.
>
> . . . . .
>
> A. I called her that Monday.
>
> . . . . .
>
> A. She told me that if I wanted to get the stereo set that I would have to be at the auction in October.
> Q. Did you ask to speak to Judge Womble?
> A. No, I didn't. She said that was his decision. Plaintiff's Deposition at 29.

flects the high value, embedded in our constitutional and political history, that we place on a person's right to enjoy what is his, free of governmental interference. citing *Lynch v. Household Finance Corp.*, 405 U.S. 538, 552, 92 S.Ct. 1113, 1122, 31 L.Ed.2d 424 (1972). 407 U.S. at 80–81, 92 S.Ct. at 1994, 32 L.Ed.2d at 570.

The court appreciates the difficulty encountered by a landlord who has no knowledge, prior to the seizure of goods, of a third party's interest therein. In that situation the "notice" aspects of procedural due process are virtually impossible to comply with. However, when, as here, a third party comes forward with proof of ownership prior to sale of the goods, due process mandates, at a minimum, that the third party be afforded a meaningful opportunity to be heard. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Additionally, if the third party is known to the landlord prior to the actual seizure of the goods, due process requires that the individual receive the same notice and predistress opportunity to be heard that is granted to the tenant in § 27–39–210.

■ Under the principles of due process, as reflected in the Supreme Court decisions of *Sniadach*, *Fuentes* and their progeny, the court concludes that § 27–39–250 of the South Carolina Code of Laws 1976, as amended, is in obvious violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution insofar as it denies a third party who owns property found on the tenant's premises any notice or opportunity to be heard whatsoever, either prior or subsequent to the actual seizure.[7]

THEREFORE IT IS ORDERED that § 27–39–250 of the South Carolina Code of Laws 1976, as amended, is unconstitutional and that the plaintiff, Madonia Pettigrew, is entitled to recover seven hundred and fifty dollars ($750.00) as stipulated damages for the deprivation of her property, without due process of law, in contravention of the Fourteenth Amendment to the United States Constitution.

---

7. Having held the statute unconstitutional on the ground of procedural due process, the court need not reach the equal protection or substantive due process arguments asserted by the plaintiff, nor does the court address the claim made under Article I Section 13 of the South Carolina Constitution or the state's common-law.

The court does note that while its research revealed no decisions holding third party distraint violative of substantive due process and that at common-law all property on the demised premises was subject to distraint, the court is in accord with the following observation of Judge Duncan set forth in *Weidel v. Roseberry*, 13 Serg. & R. (Pa.) 178, and quoted with approval by the United States District Court for the Middle District of Pennsylvania in *In re Northumberland Mining Company*, 16 F.Supp. 63 (M.D. Pa.1936), *aff'd Thomas v. Spruks*, 89 F.2d 998 (3d Cir.1937), *cert denied, Philadelphia & Reading Coal and Iron v. Spruks*, 302 U.S. 718, 58 S.Ct. 38, 82 L.Ed. 554 (1937):

That the goods of a stranger found on the premises are liable to distress for rent, is one of the early doctrines of the common law, the reasons of which have long since ceased; it is a doctrine not suited to the transactions of men, and the present state of society, courts of justice themselves are extending the privileges of exemption, to meet the exigencies of the present day; but it transcends judicial power to abrogate it; it is for the wisdom of the legislature to modify and change the law. 16 F.Supp. at 64.